#### UNITED STATES DISTRICT COURT
#### DISTRICT OF SOUTH CAROLINA
#### COLUMBIA DIVISION

| | | |
|---|---|---|
| Jack W. Griffith, | ) | Case No. 3:14-cv-04295-TLW |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Ameriprise Financial Services, Inc., and | ) | |
| Ameriprise Financial, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Jack W. Griffith filed this action regarding a bonus payment dispute on November 4, 2014. Doc. #1. The same day, he filed a motion seeking a temporary restraining order ("TRO") to stay arbitration of the dispute before the American Arbitration Association ("AAA") until the Financial Industry Regulatory Authority ("FINRA") rules on whether to issue a permanent injunction in the matter. Doc. #4. Defendants Ameriprise Financial Services, Inc. and Ameriprise Financial, Inc. have filed a response opposing the motion. Doc. #18. Following briefing on the matter, the Court held a motions hearing on December 1, 2014. Doc. #20. At that time, the Court took the injunction matter under advisement. Id. The motion for TRO is now ripe for disposition, and for the reasons noted below, the Court finds that the motion should be denied.

#### **FACTS**

According to the Complaint, Plaintiff was formerly employed by Ameriprise Financial Services, Inc. ("Ameriprise Services") as a Branch Office Manager and Financial Advisor from October 2008 through January 27, 2014. Doc. #1 at 1. Ameriprise Services is a subsidiary of Ameriprise Financial, Inc., ("Ameriprise Financial"), the party who filed for arbitration with AAA. See Doc. #1. At the conclusion of his employment with Ameriprise Services, Plaintiff

1

received a bonus payout. Id. However, the parent company Ameriprise Financial maintains that after leaving Ameriprise Services, Plaintiff violated a non-compete provision entitling Ameriprise Financial to recoup at least a portion of the bonus payout. Id. As a result, Ameriprise Financial has filed a demand for arbitration with AAA. Id. Ameriprise Financial's subsidiary and Plaintiff's former employer, Ameriprise Services, is not a party to the AAA arbitration. Id. In his motion for a TRO, Plaintiff argues that Ameriprise Services is the only real party-in-interest to the bonus dispute. Doc. #4 at 6. Further, he asserts that because both he and Ameriprise Services are FINRA members[1], FINRA – not AAA – is the appropriate arbitration venue. Id. at 5-6. Thus, Plaintiff asks the Court to stay the AAA arbitration so that he can seek a ruling from FINRA on the appropriate venue. Id.

## LEGAL STANDARD

A temporary restraining order is governed by the same general standards that govern the issuance of a preliminary injunction. Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th Cir. 1999). As a form of preliminary injunctive relief, a temporary restraining order is an "extraordinary remedy" that is "never granted as of right." Winter v. Natural Res. Council, Inc., 555 U.S. 7, 24 (2008).

A plaintiff seeking injunctive relief must establish each of the following four elements: (1) the likelihood that the plaintiff will succeed on the merits; (2) the likelihood of irreparable harm to the plaintiff if the injunction is not granted; (3) that the balance of equities tips in the plaintiff's favor; and (4) that the injunction is in the public interest. Winter, 555 U.S. at 19–20; Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010), overruling Blackwelder Furniture Co. of

---

[1] Ameriprise Financial is not a FINRA member.

2

Statesville v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977)[2]. Each of the four elements must be satisfied before the Court enters preliminary injunctive relief. Real Truth, 575 F.3d at 347. Moreover, a plaintiff must demonstrate more than the mere "possibility" of irreparable harm because injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief. See id. at 346 (citing Winter, 555 U.S. at 19–22).

## DISCUSSION

### 1. Success on the Merits

In his memorandum in support of a TRO, Plaintiff seeks "to enjoin [the AAA] proceeding filed by Defendant Ameriprise Financial, Inc…. until [FINRA] determines whether a permanent injunction is appropriate…." Doc. #4 at 1. Thus, to satisfy the first element of the TRO standard, Plaintiff must show that he is likely to succeed in demonstrating that AAA arbitration is inappropriate and that FINRA has the jurisdiction to rule on a permanent injunction in the matter. For the reasons stated below, the Court finds that the Plaintiff has not satisfied this element.

As an initial matter, all parties agree that disputes regarding the bonus payout are governed by the LTIA, which was signed by the Plaintiff. See Docs. #1, 18. The LTIA states that it is "issued to employee financial advisors *pursuant to* the Ameriprise Financial 2005 Incentive Compensation Plan and the 2008 Master Employment Inducement Equity Award Agreement…" ("2005 Plan" and "2008 Plan," respectively). Doc. #18-4 at ¶ 1 (emphasis added). The 2005 Plan, in turn, explicitly provides for AAA arbitration: "[a]ny dispute, claim or controversy that may arise between a Participant and the Company or any other person… under the Plan is subject to arbitration… pursuant to the Commercial Dispute Resolution Procedures of the

---

[2] In light of the Supreme Court's decision to vacate Real Truth. on other grounds, the Fourth Circuit Court of Appeals expressly reissued the portions of that opinion that articulated the revised preliminary injunction standard. See Real Truth About Obama, Inc. v. Fed. Election Comm'n, 607 F.3d 355, 355 (4th Cir. 2010).

American Arbitration Association…." See Doc. 18-9 at ¶ 15.9. Thus, read together, the terms of the LTIA and 2005 Plan provide for the resolution of disputes in AAA arbitration. While the Plaintiff disputes whether the term "pursuant to" acts to incorporate the 2005 Plan, Plaintiff has not provided – nor has the Court seen – persuasive or conclusive authority on the matter. The American Century Dictionary defines "pursuant" as follows: "in accordance with." It is reasonable to conclude that "pursuant to" incorporates the 2005 plan. As a result, the 2005 Plan weighs against the Plaintiff's likelihood of success on the merits.

Second, even if, as the Plaintiff argues, the 2005 Plan is not incorporated into the LTIA, the LTIA *on its own* permits the "Company" to select the jurisdiction for disputes:

> 6. Choice of Forum. Any arbitration, litigation or other proceeding commenced by you or the Company for the purpose, in whole or in part, of enforcing the [LTIA] or the respective rights or obligations of you or the Company hereunder shall be commenced in accordance with the applicable arbitration policy, in the Federal or State courts of New York *or in such other jurisdiction as the Company may reasonably select*."

Doc. #18-4 at ¶ 6 (emphasis added). The 2008 Plan signed by the Plaintiff and referenced in the LTIA contains an identical provision. Doc. #21-3 at ¶ 6. These provisions, Defendants argue, permit the Company – defined as Ameriprise Financial and its subsidiaries and affiliates (Docs. #18-4 at ¶ 1, 21-3 at ¶ 1) – to select the forum, whether it be in arbitration or court. These provisions also weigh against the Plaintiff's likelihood of success on the merits.

Finally, regardless of whether the LTIA allows the Defendants to select AAA arbitration to resolve disputes arising out of the LTIA, Plaintiff has not demonstrated that the Court has legal authority to compel Defendants to arbitrate before FINRA. Ameriprise Financial – which is not a FINRA member – filed the demand for arbitration with AAA; Ameriprise Services – which *is* a FINRA member – is not named as a party to that proceeding. See Doc. #18-2. Regarding Ameriprise Financial, Plaintiff has provided no persuasive authority indicating that the Court can

and should compel a non-FINRA member to arbitrate with FINRA. Regarding the Defendant Ameriprise Services, Plaintiff has provided no authority indicating that the Court can and should compel Ameriprise Services – who is not a party to the dispute – to litigate the dispute.

Plaintiff also attempts to separate Ameriprise Financial from the dispute, arguing that it is not a party-in-interest. However, Ameriprise Financial has provided evidence to the contrary. First, Ameriprise Financial is explicitly named as a party to the LTIA. Doc. #18-4 at 1. Second, Ameriprise Financial has indicated that it, and not Ameriprise Services, held the stock that was issued as the bonus award. Doc. #18. Plaintiff provides no persuasive authority indicating that Ameriprise Financial, as a party-in-interest named in the LTIA contract, cannot seek to enforce the LTIA on its own.[3] Thus, the Plaintiff has not indicated that he is likely to succeed on the merits in compelling the Defendants to await a decision by FINRA on a permanent injunction.

In summary, Plaintiff has failed to show a likelihood of success on the merits. The terms of both the LTIA and the 2005 Plan cast significant question on whether the Plaintiff can avoid AAA arbitration. Furthermore, the Plaintiff has not provided a basis for the Court to compel a non-FINRA member to arbitrate before FINRA, nor has he provided a basis to compel Ameriprise Services, which is not a party to the AAA proceedings, to pursue a dispute in which it does not seek to be involved. As a result, for the reasons stated, the Plaintiff has not shown a likelihood of success on the merits.

---

[3] Plaintiff cites FINRA Letter of Acceptance, Waiver, and Consent, No. 2009020188101 (Jan. 25, 2012) in support of his argument that by filing for AAA arbitration, Ameriprise Financial is inappropriately attempting to avoid FINRA arbitration. Doc. #4 at 13. However, the matter discussed in this letter – which is not binding precedent on this Court – is easily distinguished from the matter at hand. There, Merrill Lynch – a FINRA member – created a separate non-FINRA entity to avoid arbitration entirely. Here, neither Ameriprise Financial nor Ameriprise services are seeking to avoid arbitration, nor is there any evidence that either corporation was formed to avoid otherwise-applicable contractual terms.

**2. Irreparable Harm**

Plaintiff next argues that absent a TRO, he will suffer irreparable harm because (1) AAA arbitration violates Plaintiff's statutory and contractual rights; (2) a non-FINRA forum works to the benefit of the Defendants; and (3) FINRA has a special understanding of industry standards, regulations, and public policy, which understanding AAA lacks. Doc. #4 at 11, 12. Plaintiff also asserts that he has a legitimate business interest in seeking FINRA arbitration based on FINRA's status as "the regulator of the investment advisory industry." Doc. #1 at 10. Plaintiff asserts that as regulator of the industry, FINRA needs to "retain jurisdiction of all disputes related to this industry in order to maintain consistent ruling on issues related to the investment industry." Id.

The Court finds that Plaintiff has not demonstrated a likelihood of irreparable harm as required to meet the TRO standard. See Real Truth, 575 F.3d at 346. First, regarding the alleged loss of statutory and contractual rights, the Court finds that, as discussed above, the applicable terms allow Ameriprise Financial to pursue AAA arbitration. Second, regarding whether AAA arbitration benefits Ameriprise Financial over the Plaintiff, Plaintiff only asserts conclusory statements that such advantage exists. Third, regarding AAA's alleged lack of a special understanding of the industry, Plaintiff has not demonstrated this alleged shortcoming is more likely to harm him over the Defendants; an alleged absence of industry experience is not a basis to presume unfairness. Finally, regarding FINRA's alleged status as "the regulator of the investment advisory industry," the Court finds that FINRA's interests play no part in its consideration of the irreparable harm element. It is the Plaintiff's interests – not FINRA's – that are at issue in this case. Thus, the Court finds that Plaintiff has not met the irreparable harm element.

### 3. Balance of Equities

Plaintiff must further indicate that the balance of equities tips in his favor. In a position that overlaps with his argument regarding irreparable harm, the Plaintiff argues that he would be harmed if FINRA, with its industry experience, does not preside over arbitration of this dispute. Doc. #4 at 12. Plaintiff also asserts that the Defendants cannot show that they would be harmed by FINRA arbitration over AAA arbitration. Id. Thus, Plaintiff argues that the balance of equities weighs in his favor.

The Court finds that the Plaintiff has not demonstrated that the balance of equities weighs in his favor. As already discussed, the balance of equities with regards to FINRA's alleged industry experience is not a strong basis favoring the Plaintiff; thus, it is not clear that this argument weighs in the Plaintiff's favor. Furthermore, the Plaintiff's allegation that the Defendants would not be harmed by FINRA arbitration is not convincing. Rather, as discussed above, a TRO may deprive the Defendants of the arbitration language in their previously referenced contract, and it would further delay the arbitration proceedings already in place with AAA. As a result, the Court finds that the Plaintiff has not demonstrated that balance of equities weighs in his favor.

### 4. Public Interest

Finally, Plaintiff argues that a TRO is in the public's interest. Specifically, Plaintiff argues that a TRO in this matter benefits the public because "FINRA seeks to further the investing public's interests in privacy and freedom of choice with respect to the movement of their investment representatives between firms." Doc. #4 at 12. Plaintiff also asserts that the public has an interest in preserving the uniform application of investment industry standards, regulations, and policy, because stability lends confidence to the investment industry as a whole.

The Court finds that the Plaintiff has not demonstrated that a TRO is in the public interest. While certain public benefits might exist in granting a TRO, Plaintiff has not shown that those interests outweigh the public's interests that might be furthered in denial of the TRO. Any public interest in prompt and appropriate resolution of this dispute would be frustrated through a TRO because arbitration has already begun with AAA, and a TRO would delay the process. Furthermore, as discussed above, the contractual terms of the LTIA permit AAA arbitration in this case. Thus, the public interest in enforcement of valid contracts could be harmed if a TRO is granted. As a result, the Court concludes that the Plaintiff has not demonstrated that a TRO is in the public interest.

## CONCLUSION

Therefore, after careful consideration, this Court finds that the Plaintiff has failed to establish any of the elements required for the issuance of a temporary restraining order. As a result, the Plaintiff's Motion for Temporary Restraining Order, Doc. #4, is **DENIED.**

**IT IS SO ORDERED**.

s/Terry L. Wooten
Terry L. Wooten
Chief United States District Judge

December 31, 2014
Columbia, South Carolina